**E-Filed 6/23/09**

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| CATHY ENWERE,<br><br>           Plaintiff,<br><br>    v.<br><br>TERMAN APARTMENTS, LP, d/b/a G & K MANAGEMENT CO.,<br><br>           Defendant. | Case Number C 07-1239 JF (PVT)<br><br>**ORDER[1] DENYING MOTION FOR SUMMARY JUDGMENT AND GRANTING MOTIONS TO DISMISS** |

    Plaintiff Cathy Enwere ("Plaintiff"), proceeding *pro se*, filed the instant action against Terman Associates, L.P. and G&K Management Company, Inc. ("Defendants") on March 1, 2007, alleging racial discrimination in housing. Plaintiff claimed that she made an appointment to view an apartment, but that when she arrived for the appointment and Defendants became

---

[1] This disposition is not designated for publication in the official reports.

aware of her race, Defendants refused to show her the apartment.[2] Since the filing of the complaint over two years ago, the parties have been embroiled in a series of protracted discovery disputes. Despite extensive guidance from Magistrate Judge Trumbull and Defendants' repeated efforts to obtain discovery, Plaintiff has been unwilling to provide the basic factual background of her claims, particularly with respect to her claim that Defendants' actions caused her to suffer emotional distress. Indeed, the operative facts of this case are scarcely better developed today than they were when the case was filed more than two years ago. Notwithstanding the incomplete factual development that has hampered the progress of this litigation, on February 9, 2009, Plaintiff filed the instant motion for summary judgment. Defendants then filed the instant motions to dismiss the action as a sanction for Plaintiff's failure to comply with multiple discovery orders made by Judge Trumbull. As an alternative to outright dismissal, Defendants request that the Court strike Plaintiff's prayer for emotional distress damages, prohibit Plaintiff from supporting her request for such damages at trial, preclude the testimony of Plaintiff's witnesses, or award monetary sanctions against Plaintiff.

The Court has considered the parties' arguments and the full record, and concludes that despite her sincere belief in the justice of her cause, Plaintiff has made multiple conscious decisions to violate or disregard lawful court orders. Moreover, while this situation appears to have been exacerbated by defense counsel's insistence on holding Plaintiff to the standard of a sophisticated corporate litigant rather than focusing on the practical resolution of the parties' substantive disputes, there is no evidence that counsel has transgressed any ethical boundaries. Under the circumstances, it would be unfair to continue to subject Defendants to the substantial cost and distraction of this litigation, which appears to lack any prospect of resolution as a result of Plaintiff's repeated non-compliance with her obligations as a litigant. For these reasons, the

---

[2] On November 9, 2005, well before filing the instant action, Plaintiff lodged a complaint with the Department of Housing and Urban Development, alleging the same discrimination that forms the basis of this action. On January 9, 2007, after investigating the claim, HUD issued a statutory "determin[ation] that, based on the totality of factual circumstances known at the time of the [Department's] review, no reasonable cause exists to believe that a discriminatory housing practice has occurred. . . ." *See* 24 C.F.R. § 103.400(a)(1).

only fair course at this juncture is to dismiss the action with prejudice, and accordingly Defendants' motions will be granted. However, because it has significant questions as to whether Plaintiff presently is suffering from a mental disability that has impaired her ability to comply with her obligations, the Court expressly reserves judgment as to whether Plaintiff might obtain relief pursuant to Fed. R. Civ. P. 60(b).

**BACKGROUND**

**A.     Plaintiff's claims**

Plaintiff's initial complaint consisted primarily of narrative and did not permit the ready identification of discrete claims. On April 24, 2007, Defendants moved to dismiss the complaint for lack of subject-matter jurisdiction, failure to state a claim, and insufficiency of service of process. On May 2, 2007, Plaintiff submitted a responsive document entitled "Amendment to Complaint," requesting that the document be treated as a partial amendment to her initial complaint. While this one-page document consisted primarily of narrative and argument, the Court accepted it as an amendment as of right pursuant to Fed. R. Civ. P. 15(a), and treated the original complaint and the amendment as the operative pleading. On May 29, 2007, Defendants renewed their motion to dismiss on the grounds that Plaintiff still had failed to allege any basis for federal jurisdiction, to identify a statutory basis for her claims, or to set forth the "basic background facts that would explain how she allegedly was discriminated against." The Court agreed that the complaint lacked sufficient factual allegations to state a claim. It therefore dismissed the complaint, granting Plaintiff leave to amend with instructions that she state clearly: (1) the identities of the parties alleged to have harmed her; (2) the basis of this Court's jurisdiction; (3) each claim she wished to assert; (4) factual allegations with respect to each claim, identifying which Defendants had violated the applicable statute(s); and (5) a prayer for relief.

On August 29, 2007, Plaintiff filed her Second Amended Complaint, which contained claims under § 3604 of the Fair Housing Act ("FHA"), subsections (d) and (e). *See* 42 U.S.C. § 3604(d)-(e). Plaintiff claimed that Defendants had caused her "emotional distress and/or injury to [her] mental health." On that basis, she sought "$100,000 in actual damages for emotional

3

trauma, humiliation, embarrassments and physical injuries as a result of the emotional trauma, including inability to sleep, depression and associated mental health injuries requiring continuing medical treatment." Defendants again moved to dismiss. On March 25, 2008, after considering the record and the parties' oral arguments, the Court dismissed all but Plaintiff's claim under § 3604(d) of the FHA, which makes it unlawful to "[t]o represent to any person because of race, color, religion, sex, handicap, familial status or national origin that a dwelling is not available for inspection, sale, or rental when such dwelling is in fact so available." Although Plaintiff did not allege that any rental unit actually was available–an express element of her claim–the Court was willing to infer that fact based on a generous reading of other allegations in the complaint.[3] The Court did not in any way limit–and indeed did not discuss–Plaintiff's prayer for emotional distress damages in connection with her claim. Defendants filed an answer to the complaint on April 24, 2008, and an initial case management conference was held on April 25, 2008.

**B.     Discovery**

   **1.     Background**

The principal discovery disputes in this case pertain to: (1) the production of Plaintiff's mental health records; (2) an order requiring Plaintiff to submit to a mental status examination; and (3) an order requiring Plaintiff to sit for a deposition. When Defendants moved to compel all three forms of discovery, Plaintiff raised numerous arguments in opposition, asserting, inter alia, that the discovery cut-off date had passed, that the requested discovery would violate her privacy rights, and that the proceedings generally were biased in favor of Defendants and against Plaintiff. Judge Trumbull ultimately agreed that a mental status examination, a deposition, and production of a limited subset of Plaintiff's medical records all were essential to Defendants' ability to prepare and mount a defense. After carefully considering the record and Plaintiff's arguments, this Court overruled each of Plaintiff's objections to Judge Trumbull's orders. *See* Fed. R. Civ. P. 72(a). Nonetheless, as set forth below, Plaintiff declined to cooperate in any

---

[3] The Court reasoned that "[a]lthough Plaintiff does not expressly state that a unit was in fact available, that fact reasonably is implied by her allegation that a meeting was set up for the purpose of showing her an apartment." Order dated March 25, 2008, at 4:22-25.

meaningful way when she ultimately appeared for the mental status examination and deposition, refusing to answer basic questions about her mental health or the operative facts of her case.

**2. Initial discovery**

Defendants filed their initial written discovery requests on March 10, 2008. On multiple occasions thereafter, Plaintiff sought extensions of time to respond to the requests. On April 29, 2008, Plaintiff filed a document entitled "Ordered Schedule Date for Completion of Discoverys," in which she noted that the timing of her responses to written discovery had been discussed at the case management conference on April 25, 2008, and that the Court had suggested May 30, 2008 as the deadline for written responses. Over Defendants' objections to any enlargement of time, Judge Trumbull adopted Plaintiff's proposed May 30, 2008 deadline in a written order.

On June 2, 2008, Plaintiff filed a document entitled "Request for Subpoena to Be Served on Hud and Project Sentinel Also for Relief to Be Enter into Court and Document to Be Look at by Courts." Judge Trumbull construed the document as a request that the Court serve subpoenas on the Department of Housing and Urban Development (HUD), and for entry of judgment in Plaintiff's favor. Judge Trumbull denied the request for issuance of subpoenas as procedurally improper and directed Plaintiff to portions of the Court's *pro se* litigant manual discussing the proper means for serving the desired subpoenas. Judge Trumbull also denied the request for entry of judgment and directed Plaintiff to information regarding summary judgment procedures.[4]

On July 15, 2008, Plaintiff filed a document entitled "Response to Defendant Not Following Court Order for Discovery." Plaintiff appeared to be seeking a brief enlargement of the time for responding to additional written discovery, and an order requiring Defendants to comply with certain unspecified discovery obligations. Judge Trumbull granted the request for an extension of time and denied the ambiguous request for discovery compliance. Separately, on

---

[4] Over the next several months, Plaintiff continued to file motions pertaining exclusively to discovery disputes with HUD and the California Department of Fair Employment and Housing ("DFEH"), culminating in a motion for additional time in which to prepare a motion for summary judgment against those entities. Judge Trumbull denied the motion for a continuance on the ground that summary judgment against non-parties such as HUD and DFEH would be procedurally improper.

5

July 25, 2008, Judge Trumbull issued an order regarding Plaintiff's apparent practice of requesting that documents she submitted to the Court *not* be filed. Judge Trumbull explained that strict compliance with the court's public filing and notice rules would be required, and she directed Plaintiff to written guidance with respect to the Court's filing requirements.[5]

On October 14, 2008, Defendants filed a motion to compel Plaintiff to produce documents relating to her alleged damages, and to authorize production of portions of Plaintiff's medical records by the San Mateo County Health Department. On October 17, 2008, Defendants moved for an order requiring Plaintiff to submit to a mental status examination pursuant to Fed. R. Civ. P. 35. A hearing on both motions was set for November 25, 2008. Plaintiff objected strenuously to both motions, going so far as to file a request that the hearing date itself be vacated.[6] For administrative reasons, this Court was not able to rule on Plaintiff's objections to the hearing until after the hearing had occurred. Nonetheless, the Court undertook a thorough review of Plaintiff's arguments and issued a three-page order overruling the objections *nunc pro tunc* to November 25, 2008.

On December 4, 2008, Judge Trumbull issued a detailed order granting Defendants' motions to compel production of documents[7] and for an order requiring Plaintiff to submit to a mental status examination. Judge Trumbull provided a thorough discussion of each of Plaintiff's arguments with respect to her privacy rights, and explained that because Plaintiff had placed her mental condition squarely in controversy, a mental status examination was warranted. Specifically, Judge Trumbull stated that Defendants had a right to know "how much of Plaintiff's mental and emotional distress is attributable to their conduct, so that they have a fair opportunity

---

[5] Plaintiff denies having engaged in any such practice.

[6] In that pleading, Plaintiff also noted that she felt "discriminated against or not having equal rights in magistrate judge court room." The Court has reviewed the record of each of the many proceedings before Judge Trumbull and finds no evidence that would support an inference of discrimination. To the contrary, Judge Trumbull appears to have been exceedingly courteous and patient in her dealings with Plaintiff.

[7] The order was subject to an attached protective order and to the proviso that any party could request a prior *in camera* review of the documents.

to prepare their defense for trial." Judge Trumbull also addressed Plaintiff's argument–apparently based on her filing entitled "Ordered Schedule Date for Completion of Discoverys," discussed above–that discovery had closed. As Judge Trumbull explained, the record indicated clearly that the May 30, 2008 deadline referenced in Plaintiff's filing and subsequently adopted by the Court pertained exclusively to an extension of time with respect to *written* discovery. Judge Trumbull also noted that Plaintiff herself continued to propound discovery well after the purported cut-off date, thus waiving her argument that discovery had closed on that date.

Pursuant to a subpoena for Plaintiff's medical records, the San Mateo County Health Department submitted the records to the Court in two sealed envelopes for *in camera* review.[8] On December 4, 2008, Judge Trumbull issued an interim order instructing the parties to file by December 23, 2008 any objections they might have to an *in camera* review. No objections were filed. After conducting the *in camera* review, Judge Trumbull determined that the limited release of Plaintiff's medical records to Defendants was warranted.

On December 9, 2008, Defendants served Plaintiff with a deposition notice pursuant to Fed. R. Civ. P. 30, requesting that she appear for a deposition on December 23, 2008. Plaintiff did not respond to the notice until December 22, 2008, when she telephoned defense counsel and stated that she would be unable to attend her deposition because of injuries she suffered in a car accident on December 4, 2008. On the same day, Plaintiff filed a pleading explaining the circumstances of the car accident and requesting "time off" from her case. Defense counsel telephoned Plaintiff again on December 22, 2008 and asked her to provide an alternative date for the deposition. Plaintiff left a message with counsel indicating that she would provide additional dates by December 29 or 30. On January 6, 2009, Plaintiff telephoned counsel indicating that her chiropractor had had a death in the family, but that she would be seeing him presently and thereafter would determine "if and when we can set a new date for deposition."

---

[8] The records were accompanied by a certificate signed by the San Mateo County Health Department's Custodian of Records, indicating that the records were produced pursuant to "the subpoena [in] . . . case number C 07-1239 JF dated 11/10/08." The certificate promptly was filed on the Court's docket.

On January 9, 2009, the Court granted Plaintiff's motion to stay the action and adjusted the operative scheduling order to reflect the numerous delays that had arisen.  Shortly after the stay was lifted on January 30, 2009, Plaintiff filed objections to Judge Trumbull's orders compelling the production of her medical records and requiring her to submit to a mental status examination.  The Court overruled the objections on the ground that Judge Trumbull's assessment of Plaintiff's claimed privacy rights, evaluation of the relevance of Plaintiff's mental status to the lawsuit, and interpretation of prior scheduling orders were not clearly erroneous or contrary to law.  *See* Fed. R. Civ. P. 72(a).

The Rule 35 examination was scheduled for March 3, 2009.  However, Plaintiff still had not identified any dates on which she would be available for a deposition.  Accordingly, on February 13, 2009, Judge Trumbull entered an order formally compelling Plaintiff to appear for a deposition and instructing the parties to provide their dates of availability by February 27, 2009.  On February 27, Plaintiff contacted the Court in order to file a motion for summary judgment, but she declined expressly to provide any dates for her deposition.  Judge Trumbull subsequently issued an order scheduling the deposition for March 16, 2009.  On March 6, 2009, however, Plaintiff filed a pleading in which she purported to object to the original order requiring her to submit to a deposition.[9]  Noting that any objections should have been lodged by February 27, 2009, and that Plaintiff's motion for summary judgment–the only recent filing submitted on or before that date–could not plausibly be construed as an objection to Judge Trumbull's order, the Court overruled the objection on the grounds that it was untimely and lacked substantive merit.

**3. Mental Status Examination**

On March 3, 2009, Plaintiff appeared for the court-ordered mental status examination, which was to be conducted by Dr. James R. Missett, M.D., Ph.D., a forensic psychiatrist with many years of experience in conducting such examinations in both civil and criminal matters for the state and federal courts.  In a sworn declaration, Dr. Missett states that Plaintiff

---

[9] The document was styled "Plaintiff Motion to dismiss Defendants Entirer Order for Mental Health Examination & Deposition / When Examination was a Set Up [sic] for Laurie B. Hiller to Use James R. Missett for a deposition."

> defiantly refused to cooperate in any meaningful way in the Examination, rendering it completely useless. She was combative, controlling, manipulative and wholly uncooperative, even resisting giving the most basic information such as her name and how much schooling she had completed. She refused to respond to any of my substantive questions, and attempted to unilaterally and improperly limit the scope of my questions . . . . She repeatedly made and received calls on her cell phone while in my office, requiring me to request on at least five occasions that she turn off her phone. She abruptly stormed out of my office when I asked if she had ever stayed overnight in a hospital, thereby ending the Examination.

Missett Decl., ¶ 3. Plaintiff does not dispute this characterization of her conduct.

**4. Deposition**

Plaintiff appeared for her deposition on March 16, 2009. However, as with the mental status examination, she declined to provide any meaningful information to Defendants. While the deposition consumed approximately five hours, Plaintiff submitted to questioning for a total of an hour and a half. The remainder of the time was spent in an attempt to induce Plaintiff's cooperation, principally by recourse to assistance from Judge Trumbull. During the aggregate hour and a half when Plaintiff did entertain questions, she declined to provide answers to nearly every one of them and refused to provide any substantive information about her case. In fact, a table prepared by the Court Reporter confirms that Plaintiff refused to answer a question on 110 separate occasions during the ninety minutes of questioning.

As the sole reason for declining to answer the questions posed by defense counsel, Plaintiff asserted repeatedly that the District Judge had "dropped" her emotional distress claim. In response, Judge Trumbull undertook a searching review of the docket to determine whether Plaintiff was correct in her assertion, but neither the Judge Trumbull, nor Plaintiff, nor defense counsel could identify any docketed order or other filing suggesting that Plaintiff's prayer for emotional distress damages had been stricken. Defense counsel nonetheless offered to proceed on the basis of a stipulation that the request for emotional distress damages no longer was in play. Defense counsel conceded that this effectively would end the case, but noted that it also would allow Plaintiff to avoid the apparent discomfort of being deposed. Plaintiff refused to give up her request for emotional distress damages, but she nonetheless continued to assert that she should be excused from her deposition because the District Judge had "dropped" emotional

distress damages from the case.[10]

A hearing on Plaintiff's motion for summary judgment and Defendants' motions to dismiss was held on April 10, 2009. At the hearing, Plaintiff claimed that she had been prejudiced severely by misconduct on the part of defense counsel, Judge Trumbull, and the staff of the Clerk's Office. To provide Plaintiff with a full and fair opportunity to be heard, the Court authorized her to submit two supplemental statements, one setting forth any alleged misconduct by defense counsel, the other reciting alleged misconduct by Judge Trumbull or the Clerk's Office. Defense counsel was authorized to file a response to Plaintiff's statements. In the weeks following the hearing, the Court received numerous filings from Plaintiff, all of them addressed directly to chambers. The Court has considered each of these documents thoroughly in the course of deciding the instant motions.

## II. LEGAL STANDARD

### A.   Summary judgment

Summary judgment is appropriate when there are no genuine and disputed issues of material fact and the moving party is entitled to prevail as a matter of law. Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The Court must view the evidence in the light most favorable to the non-moving party, and all reasonable inferences must be drawn in favor of that party. *Torres v. City of Los Angeles*, 540 F.3d 1031, 1039-40 (9th Cir. 2008). The moving party bears the burden of showing that there is no material factual dispute. Therefore, the court must regard as true the opposing party's evidence, if supported by affidavits or other competent evidence. *Celotex*, 477 U.S. at 324.

### B.   Case-dispositive sanctions

A court may dismiss an action in its entirety if a party fails to comply with court orders.

---

[10] Subsequently, Judge Trumbull explained in a detailed written order that the record was inconsistent with Plaintiff's assertion that her prayer for emotional distress damages no longer was operative. *See* Order re Mid-Deposition Disputes, dated March 19, 2009, at 1-4. Specifically, Judge Trumbull noted that both the District Judge's orders and Plaintiff's own filings unambiguously demonstrated that the prayer for emotional distress damages remained in the case. *Id*.

1 | Fed. R. Civ. P. 41(b).  A court also may impose sanctions, including the sanction of dismissal, on
2 | a party who refuses to comply with discovery orders.  Fed. R. Civ. P. 37(b)(2)(A)(v).  To warrant
3 | a sanction of dismissal, "the losing party's non-compliance must be due to willfulness, fault or
4 | bad faith."  *Henry v. Gill Industries, Inc.*, 983 F.2d 943, 946 (9th Cir. 1993) (quoting *Fjelstad v.*
5 | *American Honda Motor Co.*, 762 F.2d 1334, 1337 (9th Cir. 1985) (internal quotation marks
6 | omitted)).  However, "'disobedient conduct not shown to be outside the control of the litigant' is
7 | all that is required to demonstrate willfulness, bad faith, or fault."  *Id*. at 948 (quoting *Fjelstad*,
8 | 762 F.2d at 1341).  In determining whether dismissal is justified, a court must consider the
9 | following five factors: (1) the public's interest in expeditious resolution of litigation; (2) the
10 | court's need to manage its docket; (3) the risk of prejudice to the party seeking sanctions; (4) the
11 | public policy favoring disposition of cases on their merits; and (5) the availability of less drastic
12 | sanctions.  *Valley Engineers, Inc. v. Electric Engineering Co.*, 158 F.3d 1051, 1057 (9th Cir.
13 | 1998) (citing *Malone v. U.S. Postal Serv.*, 833 F.2d 128, 130 (9th Cir. 1987)); *Henry*, 983 F.2d at
14 | 948.

### III. DISCUSSION

**A.     Motion for summary judgment**

Plaintiff moves for summary judgment on the ground that defense counsel's handling of discovery constituted an "interference" with Plaintiff's mental health and a deprivation of her liberty and property without due process of law.  In support of her motion, Plaintiff has provided her own affidavit, which states that defense counsel has "attack[ed] [Plaintiff's] creator [sic]" on numerous occasions and has committed perjury with respect to the applicable discovery cut-off date.  Plaintiff states further that counsel "caused damages in [Plaintiff's] life by shielding the truth to get discovery," thereby violating the Fourth and Fifth Amendments to the U.S. Constitution.

Conspicuously absent from Plaintiff's motion and supporting affidavit is any reference to housing discrimination.  Because Plaintiff's sole remaining claim in this action is for discrimination in the provision of housing pursuant to 42 U.S.C. § 3604(d), judgment may be entered in her favor only if she carries her burden of demonstrating the absence of a genuine

dispute of material fact with respect to whether Defendants engaged in unlawful discrimination. Because Plaintiff has presented no evidence on this point, she has not carried her burden, and her motion for summary judgment must be denied.

**B.      Motions to dismiss**

As should be clear from the Court's recitation of the sad and unfortunate history of this litigation, Plaintiff has failed to comply with court orders on multiple occasions, ranging from her refusal to provide dates for her deposition to her refusal to participate in the deposition itself or in her Rule 35 examination. Nearly thirty substantive orders of this Court have failed to advance this litigation beyond its incipient stages, and as a result of Plaintiff's unwillingness or inability to comply, Defendants still lack the most basic knowledge of the facts surrounding the allegedly discriminatory conduct that underlies this action.

**1. Factors governing imposition of case-dispositive sanctions**

The first two factors relevant to the imposition of case-dispositive sanctions–the public's interest in the expeditious resolution of litigation and the court's need to manage its docket–favor dismissal, in that the Court's resources never are well spent on litigation in which the parties' conduct thwarts all attempts at efficient resolution. More significant, however, is the serious prejudice that Defendants have suffered and will continue to suffer if this action is allowed to proceed. For over two years, Defendants have had to pay their attorneys to engage in this wholly unproductive litigation. Despite their efforts to proceed, Defendants now find themselves essentially where they began as a result of Plaintiff's refusal to cooperate. They have been subjected to a persistent financial drain and yet are left with no factual basis upon which to mount a defense to Plaintiff's claims.

Defendants' inability to mount a defense also confirms the unavailability of less "drastic" sanctions. The Ninth Circuit has explained that "[w]hat is most critical for case-dispositive sanctions, regarding risk of prejudice and of less drastic sanctions, is whether the discovery violations 'threaten to interfere with the rightful decision of the case.'" *Valley Engineers, Inc. v. Electric Engineering Co.*, 158 F.3d 1051, 1057 (9th Cir. 1998) (quoting *Adriana International Corp. v. Thoeren*, 913 F.2d 1406, 1412 (9th Cir.1990). Because Plaintiff may not proceed on a

claim as to which she has withheld critical information, only sanctions such as striking the complaint, prohibiting Plaintiff from supporting her request for emotional distress damages at trial, or preventing Plaintiff from introducing witnesses on that subject, would be adequate. Yet, while such sanctions would be tantamount to dismissal, they undoubtedly would result in further motion practice and the pointless expenditure of additional resources. Collectively, these considerations strongly outweigh the sole countervailing interest of resolving cases on their merits.

**2. Disobedience not shown to be beyond the control of the litigant**

Plaintiff has emphasized throughout this litigation that she is a person with a mental disability. The Court recognizes this fact and also is keenly aware of the difficulties that Plaintiff faces in navigating the complexities of federal litigation practice. There is no evidence in the record at this time, however, that Plaintiff's violation of the Court's orders was beyond her control. Thus, only if Plaintiff can provide evidence to support the sweeping allegations of misconduct that she has leveled against defense counsel, Judge Trumbull, and the Clerk's Office may the Court properly view Plaintiff's conduct in a more favorable light. In support of her claims of wrongdoing, Plaintiff has submitted the following documents:[11]

> 1. An envelope containing: printed copies of docket nos. 108, 115, 125, 135 (three copies), 143, and 146; a letter addressed to Chief Judge Walker regarding Plaintiff's complaints about the handling of her case; a short, discovery-related letter from defense counsel; an objection by Plaintiff to the November 25, 2008 hearing on Defendants' discovery motions, which the Court overruled; and an undated and apparently unfiled document entitled "REPLY IN SUPPORT OF PAINtiff [sic] for Declaratory Summary Judgment against to Also for a Ruling Against defendant dismissal For Failure to Serve Subpoena on mental Health Clinic or Client for RECORDS FOR Ordering Records before hearing for violation of 504 Mental Health Gov't Code again Mental disable For Malious Attacks on mental disable and conspiring with others."
> 2. A letter from Chief Judge Walker to Plaintiff, copied to the Court, containing Plaintiff's letter to Judge Walker.
> 3. An undated submission in response to the Court's instruction that Plaintiff submit statements describing any purported misconduct by defense

---

[11] Documents that previously have not been uploaded to the electronic filing system are attached to this order.

Case No. C 07-1239 JF (PVT)
ORDER DENYING MOTION FOR SUMMARY JUDGMENT AND GRANTING MOTIONS TO DISMISS
(JFLC3)

        counsel, the Magistrate Judge, or the Clerk's Office.[12]
   4. A letter postmarked May 18, 2009, containing Plaintiff's objections to the Magistrate Judge's handling of Plaintiff's medical records.
   5. An undated letter regarding purported misrepresentations about Plaintiff's lack of consent to the disclosure of her medical records.
   6. An envelope postmarked June 5, 2009, containing exact copies of docket nos. 85 and 110.
   7. A letter received June 16, 2009, concerning the qualifications of certain employees of the San Mateo County Health Department to perform their duties, and their alleged mishandling of Plaintiff's medical records.
   8. An envelope postmarked June 19, 2009 and received June 22, 2009, containing a letter and related miniature cassette tape recording pertaining to the San Mateo County Health Department staff's handling of Plaintiff's medical records.

Document sets 1, 2, 5, 6, 7, and 8 have no plausible bearing on the question of whether Plaintiff's failure to comply with court orders should be excused.[13] With respect to the remainder of the allegations, the Court does not doubt the sincerity of Plaintiff's beliefs, but it concludes that the provable facts fall well short of supporting an inference of wrongdoing.

     Beginning with the alleged misconduct by defense counsel, Plaintiff states that counsel "Has Work Hard to change this Justice System to do or say anything to get her way by using people and manipulating the system that stand for Equality & Equal Rights For all Americans," and told Plaintiff that "she would have my case thrown out of court." Plaintiff also states that defense counsel humiliated her in open court and conspired with Judge Trumbull to falsify documents. The Court agrees that counsel's decision to refer in open court to a highly sensitive

---

[12] The Court will assume that this document was filed by the April 17, 2009 deadline imposed at the hearing on the instant motions.

[13] With respect to the first two items, the letter to Chief Judge Walker merely restates allegations detailed in Plaintiff's other filings. With respect to the fifth item, Plaintiff wishes to clarify that she never signed any document in support of Defendants' request to obtain her medical records. This issue is not before the Court. In any event, the Court has no doubt that Plaintiff was unwavering in her strenuous opposition to the granting of any access to her medical records. Plaintiff also states in the fifth item that "Gerry Spence invited me into this food for thought when he talk about AND he said EVERY YEAR Corporate Crimes to Americans IS over ten times greater than the combined larcenies, robbies, burglaries, and auto thefts committed by individuals serious misbehavior allows the corporation to perate with out regards to moral values in my case racial discrimination and mental disable people but the Federal Goverment and Court System is suppose to support that cause and people like Myself Here is more information . . . ." However, Plaintiff has not explained how this statement is relevant to the instant action.

episode in Plaintiff's childhood was inappropriate and injurious. The duty of zealous advocacy for a client does not require that counsel be indifferent to the practical difficulties of persons such as Plaintiff who face mental or emotional challenges. Nothing in counsel's conduct, however, excuses Plaintiff's non-compliance with court orders. With respect to her other allegations concerning defense counsel, Plaintiff simply has not identified any documents that were falsified or otherwise altered.

Plaintiff claims that Judge Trumbull humiliated her in court by inquiring as to whether she understood the function of a motion to compel. However, the record reflects that Judge Trumbull merely was attempting to ascertain whether Plaintiff understood the relevant discovery procedures. Plaintiff also claims that Judge Trumbull withheld objections to her orders until the time for ruling on objections had expired. The record reflects, however, that the District Judge did receive each of Plaintiff's objections in advance of the deadline for acting on them, and ruled on the merits of each objection. Similarly, while Plaintiff claims that "defendants don't have to follow orders Bias and every thing they do [Judge Trumbull]" covers for them, Plaintiff has not provided evidence to substantiate her claim.

Plaintiff asserts further that Judge Trumbull conspired with defense counsel to obtain Plaintiff's medical records in a manner that was unauthorized or outside her judicial authority. Plaintiff bases this assertion on the fact that her medical records had been requested by the Court prior to the hearing on Defendants' motions to compel. But this procedure was neither improper nor clandestine. *See* Interim Order, dated December 4, 2008 (noting that "Non-Party San Mateo County Health Department submitted the subpoenaed records to the court in two sealed envelopes, along with a cover letter asserting the confidentiality of the records and asking the court to conduct and *in camera* review of the records for relevancy and confidentiality prior to release," and that "[t]he court ha[d] *not* opened the two sealed envelopes containing the records" (emphasis in original)). Indeed, the San Mateo Health Department recorded that it had "clarified [to plaintiff that] we submitted . . . records to the judge under seal for judges [sic] to decide if [the records] should be released . . . pursuant to motion of discovery filed by defendants. . . . [We] clarified that . . . we are compelled to provide this info[rmation] at this time to [the] judge."

Thus, although this Court acknowledges Plaintiff's sincerely held belief that "defense Team and Judge Trumbull Even My own medical clinic have caused me great harm all over Apartment and this was Never about me and As Laurie B. Hiller but it Even If they did do All I say they did what dose she mean by that . . . ," there is no evidence in the record that would suggest the improper handling of Plaintiff's medical records.[14]

With respect to misconduct by the Clerk's Office, Plaintiff claims that: (1) numerous "documents have come up missing when I give them to tiffany desk clerk"; (2) Clerk Tiffany stole or tampered with Plaintiff's file;[15] (3) Clerk Tiffany lied to Plaintiff about the location of her file; and (4) Clerk Tiffany attempted to steal Plaintiff's driver's license. Plaintiff has provided no evidence or suggestion of evidence in support of any of these claims.[16] She has pointed to no specific files that are missing and has failed to identify any documents that were altered or otherwise tampered with. Her claim with respect to the location of her file merely

---

[14] Plaintiff's related claim that defense counsel prematurely and improperly obtained her medical records is equally unfounded. Plaintiff bases her claim on the fact that the physician who attempted to conduct a mental status examination of her on March 3, 2009 was in possession of her records at that time. Since the records had been produced long before that time, the fact that the physician was in possession of the records is unsurprising. While Plaintiff continues to claim that the release of her medical records to anyone constitutes a violation of her privacy rights, the Court already has ruled on multiple occasions that Plaintiff waived certain of her rights by putting her mental condition squarely in issue in this lawsuit.

[15] Plaintiff states: "When I had A Letter From Laurie B. Hiller Put inside My declaration for Motion for Summary Judgement Against her stay and Tiffany was making copies there was A Letter from Laurie B. Hiller to Me stating That She Was Writing to Let Me Know that May 30th is the Deadline for Discovery Discloser that Both partys has agreed to This date and it is final. Then Signed Laurie B. Hiller Sense Then Laurie B. Hiller Has Fraudulently Changed the original Letter at Least 2 + 3 Times Laurie B. Hiller and I went Before [the Court, which] gave the order the Magistrate Judge signed it herself so she new that discovery was close and all Four of US Agreed but the day that Tiffany was making Copies She took the Letter out of My brief Right infront of my face I told her you put that back in there why are you taking papers out of my work Matter fact I don't even what you handling my paper Cordonna took them but still paper was Changed Laurie B. Hiller doesn't live Here so some one is re typing and fixing papers."

[16] Plaintiff does refer to a "Real thick File that No long Exist," apparently containing "all the Russian Names on Rent Roll, Wait, lists, a paper from a mortuary, [and] Poof of the Apartment I was to Rent."

16
Case No. C 07-1239 JF (PVT)
ORDER DENYING MOTION FOR SUMMARY JUDGMENT AND GRANTING MOTIONS TO DISMISS
(JFLC3)

reflects the fact that the paper version of the file is stored in the Clerk's Office while working copies of pleadings are kept in chambers and used in conjunction with the Court's electronic filing system. Nor has Plaintiff provided any evidence of an attempted theft of her driver's license.

### IV. CONCLUSION

This Court never has doubted Plaintiff's good faith in bringing and prosecuting this lawsuit. Plaintiff has expended enormous effort in the draining and often unpleasant process of litigation, and there is no reason to doubt her sincerity. It also is apparent that Plaintiff suffers from severe emotional issues–not of her own making–that at times have impaired her ability to make appropriate decisions. That said, Plaintiff has made a long list of decisions that have placed Defendants and the Court in a most difficult position. Litigation cannot be allowed to proceed endlessly without results. While the Court recognizes Plaintiff's difficulty in understanding and complying with the procedural intricacies of federal practice, and acknowledges that in her zeal to represent her client defense counsel occasionally may have acted uncharitably toward Plaintiff, it is Plaintiff's serious and willful violations of this Court's orders, without satisfactory explanation, that has most hindered the progress of this action. Litigants have duties as well as rights. One party may not subject the other to the severe financial drain of litigation without herself adhering to the rules. Although Defendants have attempted for over two years to advance this litigation, they are scarcely closer to resolution than when the litigation began. Under these circumstances, dismissal with prejudice is the only just course. Accordingly, judgment shall be entered for Defendants, and the clerk shall close the file. Having assessed the relevant factors, the Court determines that the parties shall bear their own costs.[17]

**IT IS SO ORDERED.**

---

[17] The Court strongly encourages Plaintiff to seek assistance from both legal and mental health professionals in evaluating whether and how to seek relief from this order pursuant to Fed. R. Civ. P. 60(b).

DATED: 6/23/09

_____
JEREMY FOGEL
United States District Judge

Case No. C 07-1239 JF (PVT)
ORDER DENYING MOTION FOR SUMMARY JUDGMENT AND GRANTING MOTIONS TO DISMISS
(JFLC3)

1  This Order has been served electronically upon the following persons:

2  Cesar Javier del Peral    cesar.delperal@dfeh.ca.gov

3  Eve Helayne Lewin Wagner , Esq    ewagner@swattys.com

4  James A. Scharf    james.scharf@usdoj.gov, mimi.lam@usdoj.gov

5  Laurie Beth Hiller    lhiller@swattys.com

6  Lindsey A. Urbina    Lindsey.Urbina@dfeh.ca.gov, Voneciel.Gaines@dfeh.ca.gov

7  Notice of this Order has been delivered by other means to:

8  Cathy Enwere
   1263 Madera Ave.
9  Menlo Park, CA 94025

Case No. C 07-1239 JF (PVT)
ORDER DENYING MOTION FOR SUMMARY JUDGMENT AND GRANTING MOTIONS TO DISMISS
(JFLC3)